1-3-5957 Steve B Smith et al. v. Jefferson County School Board. Oral argument, 15 minutes per side. Mr. Taylor for the appellant. May it please the court, I'd like to just start by affirming what I had asked the clerk to do, which is to reserve five minutes for rebuttal. My name is Jonathan Taylor and I represent the defendant, or the appellant, Jefferson County Board of School Commissioners, who respectfully request that this court reverse and remand to the District Court for the Eastern District of Tennessee for entry of judgment in the favor of the school board and hold two things. And I would concede that I'm narrowing or attempting to narrow down some of the issues that we appealed and filed in our briefs. I believe we raised eight issues in the brief, at least for the purpose of today, I'd like to focus in on two of those. One of which is obviously the establishment clause and the school board's decision to outsource its alternative school services to Kingswood School. We would ask this court to hold that that did not violate the establishment clause of the First Amendment. Second of all, we would ask this court to find that the District Court abused its discretion in awarding compensatory damages to the plaintiffs under the guise of state law, as those claims were dismissed without prejudice by the District Court in the November 2006 opinion. And that decision was not challenged in this court on the prior appeal. This is the second time we have been before this honorable court. I'd like to start with regard to the establishment clause by addressing one of the key things that this court asked the parties to address, which is the application of Town of Grease v. Galloway and how that might potentially affect this court's resolution of this case. First of all, Galloway abandoned the traditional endorsement test, which formed the basis of the Eastern District's decision in this case. Just as the Second Circuit in Galloway had relied on endorsement of religion, the Supreme Court reversed that without applying anything with regard to the endorsement test. And they did that likely because of the historical reasons and the idea that this might potentially condemn a whole host of traditional things that, as chiefly in that case, legislative prayer that we value in terms of our society. Categorically, just upholding the endorsement test that the District Court used in this case frankly runs afoul of current Supreme Court precedent as found in the Town of Grease decision. You would concede that Town of Grease did not explicitly abandon the endorsement test? Correct. Yes, Your Honor, I would concede that. They didn't explicitly come out and say that. But I believe that that is a logical inference from the opinion in that decision by the Supreme Court. Do you believe that it has – I mean, Town of Grease and other cases of that type seem to arguably be limited to the particular context, the sort of proper role of public religion in American life sorts of cases. Do you think that it has implications for this type of case? I do, at least just in terms of the test. I mean, we concede that the test is difficult in application. This Court and other courts have found it difficult to, at least certainly at District Court level, have found it difficult to apply the Lemon test. This is not the first time the Court has resorted to looks at history for help in these sorts of Establishment Clause cases, and it's not the first time that the Court has sort of looked to a variation of Lemon in doing that without explicitly doing away with the Lemon test. Would that be an accurate statement? That is, Your Honor. That's a fair assessment and a fair take. So would there be a reason to say they meant more this time than they did other times when they've done that? This time being Town of Grease. Well, I just think that we are at least limited by the most recent opinion, and it is the most recent opinion on the Establishment Clause by the Supreme Court. And I think that there was a purpose in the Supreme Court doing what it did, which was, you know, to abandon the traditional Lemon test and at least just focus on the historical purpose and those sort of issues with regard to that. And it did have Marsh, which kind of led it to that conclusion, obviously. If we take the position, though, that if the Court hasn't explicitly abandoned it, then, you know, as Agostini and other cases have said, we're stuck with what they have explicitly done in the past, how, if at all, does Town of Grease impact the way we look at this case in terms of some elements of the Lemon test? Well, one of which is the coercion-type test, and Town of Grease did a good job of saying, you know, mere offense is not enough, at least, you know, with regard to mere offense. I apologize for my dialect. No, no, I don't think yours is that different from mine. But the mere offense to those types of, in that case. Who took offense here? Well, that is precisely the issue, Your Honor. In this case here, there is absolutely no testimony on behalf of the plaintiffs, at least, in this case, that took any offense whatsoever to anything going on in Kingswood School. In fact, what you had was a complete absence of any sort of testimony from those plaintiffs as to what went on at Kingswood for seven years. I would remind the Court, seven years, the contract between Jefferson County Board and Kingswood School. And not once did we have any complaints for any parents, any students, about any sort of religious teachings going on, teachings or any... We're here, unless I'm misunderstanding things, we're here solely on a question of taxpayer standing and that kind of offense. And what in the record, where does that really leave us if we're just looking at taxpayer standing here? Well, that leads us to one of the issues that we raised in the brief and that we did address in the reply brief, which is that there is absolutely... The limitation for taxpayer standings is limited to an injunction or declaratory relief. You know, as you correctly noted in the en banc decision... You may have also noted that I was sticking out like a sore thumb there. But I liked it, Your Honor, and my clients loved it. And what that issue is, is that they're limited solely to declaratory injunctive relief. They're asking... You've addressed that in the context of the relief, but I found myself wondering, frankly, if I had been... As one who did not stick out like a sore thumb in that case, I found myself wondering if I had been right or wrong because it seems that the evidence here had absolutely no relation to the sort of injury that's being pursued and the injury on which standing was based. Should there be some relationship in the context of the substance of the claim, or is it only a damages question? Well, it should, and should have been in this situation. There was not any sort of correlation between the standing of the plaintiffs as taxpayer standings and the actual proof that was put on in the trial. And none of those really matched up. What they had was essentially, as Judge Batchelter had pointed out, is a contractual claim because their jobs at the alternative school were abolished when the alternative school was closed and shut down. And they guised it as a contractual claim under the guise of an establishment clause violation. And there was no basis, at least for that, and there was absolutely no testimony in the trial about any sort of problems with regard to the teachings that these students had. At most, what we have is a chapel on the site that these students may or may not have gone into on a very limited basis. You have these report cards and the weekly family feedback form which have these biblical references, right? There is one scripture. It's the same scripture. It's Luke. I believe it was chapter 16 or chapter 18. I think I've switched the verses, 16 or 18. It's one of the two. But in any event, what an alliance for defense actually raised a good point, which is that that's not all that unusual, at least in this context, with regard to students who have been cast away. These are alternative school students who have been cast away from their traditional home school and essentially... It's a matter of the fact on that, and I should know the answer to this and I can't remember. I know that that scriptural piece had the citation to Luke, but was it the whole... It's not. Was it just suffer the little children? That's it. So it doesn't even mention the kingdom of heaven. It does not. Okay. And seeing that my time is up, Your Honor, I will be glad to address any additional issues that are raised by my co-counsel. Thank you, Your Honor. Thank you. May it please the Court, my name is Eric Morrison. I represent the appellees David Kucera and Vicki Forgaty. In this case, after a full trial, the district court made extensive detailed findings of fact. The court held that Kingswood School was a pervasive Christian institution. The alternative school students from Jefferson County, the court found, attended assemblies in the chapel, which was located on Kingswood's campus, and this chapel was adorned with the hallmarks of the Christian faith. Were they required to attend? They were not required to attend, but the evidence is that they did attend. The chapel inside had pews that had crosses engraved on the sides, the Bibles were located in the pews. I believe it's Exhibit 51. Were those assemblies, so that was voluntary attendance, right? Correct. They had various programs that were put on by Kingswood, and because of the volume, they had different classrooms at Kingswood, and because of the volume, for everyone to attend a program, the only location was at the sanctuary. So the premise there would sort of be, if that's the strongest fact in support of your case, the premise would be that First Amendment harm comes to children from being in a room in which there are religious symbols or which they might come within close proximity of a Bible? Well, I don't think that in this case, Your Honor, that it was the strongest evidence. It was certainly one of many pieces of evidence. Well, okay, if it's not the strongest evidence, is that the way the argument with respect to that goes? That just the mere exposure? Well, yeah. Well, I think so, Your Honor, because in this case, and it's not like the situation like in Lee v. Wiseman where it's just a graduation ceremony where there's just a prayer. This was something at Kingswood where the students, besides being in the assemblies at the sanctuary, they also received the report cards and the family feedback forms that had the biblical scripture. Let's talk about that, picking up where Judge Batchelder left off. For people who were brought up in a religious tradition, and even some who were not, the English language of educated people in this country is littered with phraseology and sayings, so to speak, that have biblical origin, whether the people who know that they're uttering those things know they have biblical origin. Now, is there some harm to folks from that if the speaker is a government entity? And how is suffering the children on a report card different from that exposure? What about if a teacher makes a biblical reference in a classroom? What's the specific First Amendment harm from this that's different from just the exposure that's inevitable if one lives in a society in which people engage in fairly intelligent conversation? And I can answer that, Your Honor. I think in this situation, this is a specific and clear religious message that is sent home to the children and to the parents. And let me correct Mr. Taylor here. It was the Gospel of Luke, Chapter 18, 16. And on these report cards and on these family feedback forms, it says as follows, Jesus said, Suffer little children to come unto me and forbid them not, for such is the kingdom of God. It says the kingdom of God. Even the director of Kingswood admitted that that could be interpreted as an invitation to the kingdom of God. And I think what's important here, if you look at how someone may view, this is not a universal theme of goodness or something like this. This particular scripture is one of the most recognized and revered of Christian scriptures, especially with regard to children. It's uniquely Christian, and it epitomizes Kingswood's operating philosophy. And that operating philosophy is found in the report cards and on these family feedback forms. And in fact, in the chapel, there is a large stained glass window that has a picture of Jesus with children sitting before him as he ministers to them. You know, my point simply, I could see, for example, a public school teacher on a particularly frustrating day saying to herself or to someone else, Suffer the little children. And everybody around would know what the rest of that Bible verse was, or many of the people around would know what the rest of that Bible verse was. And we don't think of those kinds of things in the general language as being First Amendment harms, even if uttered by a public speaker, do we? Well, I don't know if that's the case, Your Honor, because I think in this situation, again, it's Kingswood's operating philosophy. This is how they have carried on their program. It's been their motto. And clearly, the presence on a report card of this scripture has absolutely no academic purpose whatsoever. Let's say you're right about that. Do you have a case directly on point that says that's an Establishment Clause violation? The presence of biblical scripture? The presence of scripture on a report card. Well, Your Honor, nothing on point, but I think if we look at the case law, where, for instance, in Wasajizik, where you have a picture of Jesus that's in the hallway, again, in this case, we've got a report card where it says, Jesus said. We have Stone v. Graham, where you have the Ten Commandments that are located in the hall. Again, these are... In this case, we have a statement of Jesus about an invitation into the kingdom of God. Right, but here, it's clear of the facts, right, that in the classrooms, there was absolutely no religious references of any kind in the classroom building, were there? Well, that's correct, Your Honor, but I think that what we look at is the overall... There are religious displays via the report cards, via the website, the literature that goes out, the sanctuaries that they have, all of these... The literature that goes out in general or with regard only to the alternative school? Well, some of it... Some of it goes out in general. You mean to other Kingswood students, not to other public school students. Correct, and then you have the annual report of Kingswood that's available, and in that, the annual report contains language that talks about instilling a personal faith in God. But, again, is that report... That report isn't specific to the alternative school. That's what Kingswood does in general. In general, right. So your concern is that taxpayers are harmed here by the fact that this Christian organization, which does disseminate Christian views with regard to the rest of its operation, and I'm not now talking about what's on the report cards, but the fact of the dissemination of that information and its availability on their website is a First Amendment, an establishment clause, harm specifically now with regard to the running of the alternative school? Yes, Your Honor, I think what we're saying here is besides the report cards, there is a school improvement plan that referred to a school chaplain, and the school improvement plan applied to the alternative school students. The school improvement plan also said that the school was to provide spiritual guidance to the students, and this applied to the alternative school students. If you were to go on the website, and it doesn't distinguish between the residential program and the alternative school, but if you were to go on the website, there are numerous instances throughout Kingswood's website that proclaims and promotes the Christian ministry. But the alternative school students are not specifically subjected to that as part of the alternative school program. Not as the alternative school program, but we had one parent whose son was remanded to the alternative school, and she testified that her investigation of Kingswood, because she didn't want her child to go to Kingswood, and they have to go to Kingswood. They have absolutely no choice. It's mandatory. But she got on the website to see what it looked like. She was concerned about the safety because there's disciplinary kids at the alternative school, and she was reassured by the principal at Kingswood that her son would be in a Christian environment. Another parent testified that he was told that his grandson would receive a good Christian education. And so I think all these, the district court, in weighing all this evidence, found that this created a coercive Christian environment that implicitly promoted the Christian faith. Can I shift gears with you just a little bit and ask you the question that I asked Mr. Taylor? Your clients are here based on a finding that they had municipal taxpayer standing. Does that make any difference in what you have to prove as to the substantive elements of your claim, or does it only have impact with respect to what relief you can obtain? Well, I think it just impacts the relief that they would have as a municipal taxpayer. If there's a violation of the Establishment Clause, if this is an institution that the board should never have sent the alternative school students to an institution and that decision to move them over was a violation of the Establishment Clause, whether it's individual standing or taxpayer standing shouldn't matter. So basically, under your view, the municipal taxpayer steps into the shoes of someone whose rights have been violated, someone who might have brought a First Amendment claim, but did not, and any impact on the public fisc is not a part of the substance of the claim. Is that right? Well, in this case, Your Honor, and I hope I'm answering your question, I think that that's correct as far as that the actual activity... I don't have a firm view about that. It just seems a little odd. Well, I think that, you know, I think what the court has to look at is this, if we're going to have taxpayer money, and the evidence was that over the seven years, $1.7 million of public tax money was paid to Kingswood to operate this alternative school. So it's just sort of the contention that it's a misuse of public funds. Right, if it's an Establishment Clause violation, this is a constitutional violation, and then you have $1.7 million of public tax money going to do this. And that money was... How are your clients injured in any way differently from every other municipal taxpayer? Well, besides being before the court as municipal taxpayers, they also had a pendent state law claim, which the court considered under 1367. Wasn't the state... Isn't your adversary right that the state claims were dismissed? Well, they... Originally, the court dismissed the state claims without prejudice. When the state... Were they revived in any way other than through the award of damages? Well, the issue was... It's clear that the issue was before the court because the board filed a motion in limine to keep those damages from being presented in the court. This court remanded not only on taxpayer standing, but also remanded the case at least on one other pendent state law claim, which was... That wouldn't... The fact that a motion in limine was filed, which apparently the district court did not grant, wouldn't mean anything about the claim being in front of him. It just might mean he made legal error at an earlier point in time than the point at which he awarded damages. I mean, if there's not anything that revives the claim, I don't think it could be implicitly revived. Well, I think that... Where would we look in the docket sheet or the record in the district court to find those claims being in an undismissed status? Well, in the final pretrial order, where it said what issues were before the court, in the final pretrial order, it clearly stated that that was one of the issues that was before the court. And the court had discretion here to hear those pendent claims. And I'm about running out of time. Let me just briefly address Greece because that was one that the court asked me to address. Just briefly, in Greece, Greece solely is a legislative prayer case. It only applies to adults. In this case, we have a prayer that's brief. There's a universal theme typically in these legislative prayers. And the adults in these cases, with a town meeting, they're free to leave. And the sole basis of that was just the historic tradition that the Supreme Court looked at. Here in Kingswood, in the present case, we've got school children. This court answered that distinction in Coles v. Cleveland Board of Education where it said that you've got legislative prayer and then you've got school prayer and a school board and separated that. I'm out of time. Thank you very much. Thank you, Counsel. Rebuttal? Yeah, I'd like to start by addressing a couple of these things that were raised in reverse order, first of which is this idea of the motion in limine with regard to the state law claims. What the court did, they didn't just out, the court didn't outright dismiss or at least deny the motion in limine. It reserved ruling on that pending the proof that was going to come in before the court. The court made it very clear that this was a non-jury trial and the court didn't want it coming back to him. He was retiring and so he agreed just to take it under advisement pending the proof that would be put on by the plaintiffs and the defendants. And then with regard to the final pretrial order, I would note, at least for the court's purpose, that in that final pretrial order, the defendants did object to the plaintiffs, including the state law claims. That is very clear in the pretrial order. Plaintiffs did reserve the right to object to that. They did object to it in the final pretrial order and there is language in that final pretrial order where the defendants did reserve that issue. Was there any justification given by the district court for its inclusion, for the inclusion of the reference to the state law claims? No. At least with regard to the final order, absolutely not. There were some, at least in my mind, in my client's mind, with regard to why there was any award, whether it was truly as a violation of the Establishment Clause and not surprisingly the amounts actually add up to precisely what the claim for the salary between these two teachers and administrators had during the year prior to the contract with Kingswood. With regard to this idea that there was $1.7 million of taxpayer money spent to Kingswood, while that may be true, it's important to at least consider this. $1.1 million was also saved and that is undisputed. It's undisputed that the sole purpose was to save money by making this outsourcing to Kingswood and it's undisputed that they were saving $171,000 per year. So you multiply that by seven years, the same way they do their funny math, you save the taxpayers $1.1 million, which is a substantial sum. So you can't have it both ways. With regard to the fundraising letters, these letters were only sent to prior donors of Kingswood for the residential program. They were not sent to parents or students of Jefferson County Alternative School students. There's nothing in the record with regard to Mr. Dampierre and what he may or may not have testified, what is clear, at least, and there were a ton of hearsay objections and there was a standing objection for hearsay at that time, but the court said it was just going to hear the proof and what the witness is. It was a non-jury trial and there was no concern the court would make its decision in light of those objections. But no doubt that Mr. Dampierre, there was nothing in the record that actually demonstrated that his grandson received a good Christian education. There was an allegation that somebody during intake had said, well, you're at his inquiry that he might have, that he would receive a good Christian education. That was to align his fears. But there's nothing in the record that actually demonstrates that he actually received that good Christian education. And don't you think it's interesting that after 10 years or more than 10 years of litigation, that if there had, in fact, been good Christian education, that we would have heard from some of those witnesses. With regard to the website, this is important. Darrell Helton, who was the director of Kingswood, stated unequivocally during the trial that all of these references to the website, the website was created after the contract with Jefferson County had expired. The students had already been moved back. And he stated very clear on the record that the website was limited solely to the residential program. It had nothing whatsoever to do with the day treatment program or the alternative school program that Jefferson County and the students had. That is extremely important. I gather that Mr. Morrison couldn't cite a case directly on point. Do you have a case directly on point? I don't have one directly on point, Your Honor. At least in terms of the defendant's argument here on appeal, I think the strongest cases are the Agostini, the town of Greece, and really the Bachman, just the Bachman opinion out of the Tenth Circuit where you had the religious songs and the choirs and all of those and they were taking them into churches that were undeniably religious institutes and they were singing all of these gospel, this beautiful gospel music. But seeing that I'm about to run out of time, I just would ask this court to reverse and remand to the district court for judgment in favor of the school board. And I do thank you for your time and attention. Thank you, counsel. The case will be submitted. The remaining cases this morning are on the briefs,